(No. 12607.—Reversed and remanded.)
HERMAN CHRIST, Appellant, vs. ANNA RAKE, Appellee.

*Opinion filed April 15, 1919.*

1. CONTRACTS—*written contract is presumed to express inten-tion of the parties.* Where contracting parties have reduced their agreement to writing it is presumed to express their mutual inten-tion, and that presumption does not yield to any claim of a differ-ent intention unless the evidence of a mutual mistake is of a strong and convincing character.

2. SAME—*a written instrument will not be reformed on mere preponderance of evidence.* A written instrument will not be re-formed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt, and such remedy will not be granted upon a probability nor upon a mere preponderance of the evidence.

3. SAME—*what is an enforcible option to purchase.* A provi-sion in a written lease for a term of years that at the end of the term the lessee shall have the option to purchase the property at a specified price is an enforcible option, and in the absence of con-vincing evidence of a mutual mistake it will not be reformed to make the privilege depend upon the lessor's willingness to sell, which would be no option at all.

4. LEASES—*covenants against assignment of lease are strictly construed.* The landlord has a right to stipulate against the as-signment of a lease, but such covenants are not favored by the courts and are not extended beyond the express stipulation.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

BECKMAN, COTTRELL & PHILLIPS, for appellant.

ANDREW HUMMELAND, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On February 23, 1911, the appellee, Anna Rake, and the appellant, Herman Christ, executed a lease by which the appellee leased to the appellant five and one-half acres

of land in the town of Niles, in Cook county, for a term of three years from March 15, 1911, to March 15, 1914. The rent reserved was $450, payable in installments of $150 at the beginning of each year of the term. The lease provided that at the expiration of the term appellant should have an option to purchase the premises for $2900 cash. The premises were occupied by appellant with his family for truck gardening. During the term of the lease, on December 13, 1913, a second lease was executed for a term of three years from the termination of the first lease to March 15, 1917, and it contained an agreement that at the expiration of the term the appellant should have the option to purchase the premises for $3000 cash. The rent was the same as before, payable yearly in installments of $150 in advance. The lease was recorded in the recorder's office of Cook county, and on February 21, 1917, the appellant notified the appellee by letter of his intention to avail himself of the option and gave subsequent similar notices. On February 25, 1917, he made a tender of $3000 in gold certificates in the exercise of the right given by the lease, but the appellee refused to comply with the terms of the option or accept the money and make a conveyance. On February 26, 1917, the appellee wrote a letter to the appellant notifying him that because of an assignment of the lease made by him she had elected to declare the lease null and void and to demand immediate possession of the premises, and she wrote a similar letter to John F. Hahn, the alleged assignee of the lease. Subsequently, and before the expiration of the lease, the appellant gave further notices to the appellee of his intention to purchase the premises and made tenders, but she refused to perform the contract, and appellant thereupon filed his bill in this case in the circuit court of Cook county for a specific performance of the contract.

The appellee answered the bill, admitting entering into the contract but alleging that the true intent and purpose was that the appellant should have the option and privilege

of purchasing the premises for the sum of $3000 in the event, and only in the event, that she should then be willing to sell the premises; that the lease failed to express the mutual. intent and agreement of the parties, and that she was not at the expiration of the lease or at the time of filing her answer willing to sell the land. She also averred that there was a provision in the lease that appellant should not assign the same, and in case he should, it was to become null and void at her election; that appellant on November 11, 1916, assigned the lease to John F. Hahn, and by reason of the assignment she decided on February 26, 1917, to declare the lease null and void and notified the appellant and Hahn. The appellee filed her cross-bill against the appellant and Hahn, making the same averments of a mutual mistake and an assignment of the lease, and prayed for a reformation of the lease and the removal of the same as a cloud upon her title.

Hahn answered the cross-bill, admitting the execution of the instrument alleged to be an assignment and the service upon him of the notice alleged in the cross-bill, but averring that he relied on the language of the option and had no notice of any mistake or condition different from it. Appellant answered the cross-bill, denying that there was any mistake in the lease or that it did not express the intention of the parties, and alleging that he did not assign the lease to Hahn but made a contract with him for the sole purpose of giving Hahn the right to purchase the property under the option in the event appellant desired to exercise his right at the termination of the lease.

The evidence was heard by the chancellor and a decree was entered finding that the agreement was that appellant should have the option to purchase the premises in the event, and only in the event, that the appellee should then be willing to sell them; that by mistake of the scrivener the condition of the option was not expressed in accordance with the mutual intention and agreement of the parties;

that the appellee did not learn of the mutual mistake until February, 1917; that she was not at the expiration of the term of the lease willing to sell the premises, and that the appellant on November 11, 1916, assigned the lease to John F. Hahn. The bill of the appellant was dismissed for want of equity, the lease reformed in accordance with the findings and the recorded lease declared to be a cloud upon the title and set aside and removed. From that decree the record was brought to this court by appeal.

Where contracting parties have reduced their agreement to writing it is presumed to express their mutual intention, and that presumption does not yield to any claim of a different intention unless the evidence of a mutual mistake is of a strong and convincing character. A written instrument will not be reformed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty. *Coffing* v. *Taylor*, 16 Ill. 457; *Hunter* v. *Bilyeu*, 30 id. 228; *Shay* v. *Pettes*, 35 id. 360; *Stanley* v. *Marshall*, 206 id. 20; *Lines* v. *Willey*, 253 id. 440; *Perry* v. *Elliott*, 261 id. 553; *Anderson* v. *Stewart*, 281 id. 69.

The appellee testified that when the first lease was made the appellant applied to her to lease the premises, and she told him she would give him an option that he should have the first chance to buy if she cared to sell, and he replied that was all right; that she went to a police magistrate in Evanston and directed him to draw a lease providing for rental of $150 per year for three years, and containing an option that if she cared to sell the property the appellant should have the first chance to buy it for $2900; that the lease was drawn and appellant came to her house three or four days afterward to get it; that she then told him

to look it over and see how it was, and he said it was all
right; that she said, "You understand you have the first
chance to buy if I care to sell," and he said "Yes;" that
in December, 1913, the appellant applied to her to rent the
premises for another three years and said he would raise
the amount of the option from $2900 to $3000; that she
agreed to rent the premises, giving him the first chance to
buy if she cared to sell; that she went to the office of the
police magistrate, who was absent, and told his daughter
to write a new lease the same as the last one, with the
option for $3000; that after the lease was written the mag-
istrate came in and she asked him whether she would have
to sell the property, and he said she would not, and she
said she did not care to sell, and that when the appellant
called for the lease, three or four days later, she told him
she did not care to sell, but if she did he would have the
first option to buy. In the first lease there was a provision
that appellee would repair the hen-house on the premises,
and the girl, in copying the lease, copied that provision, but
the repairs had been made and the appellee had the provi-
sion stricken out. The lease was executed in duplicate and
each party had one. The daughter of the appellee, who
was present on the several occasions mentioned, testified to
the same state of facts as the appellee. The police mag-
istrate testified that he drew the first lease, and appellee in-
structed him that she wanted a provision inserted in it that
appellant should have the right to purchase if she wanted
to sell; that he looked over the second lease after it was
written by his daughter, and that in February, 1917, after
the difficulty arose, the appellee asked him his opinion as
to the legal effect of the option, and he told her he did
not think she would have to sell unless she wanted to, for
the reason that in case of a sale they would have to come
together and agree on the terms as to payment, but that
she could not ask any more than what terms were in the
lease. The appellant was never present at the magistrate's

office and the magistrate never saw him until the hearing. There was no evidence that he knew what occurred in his absence. The appellant testified that when he went to the appellee's house to make arrangements for the second lease she said she would lease the premises but would not give him any option, and he told her the lease would be no good to him unless he had the option, and according to his testimony there was no mistake. The appellee had one of the duplicates in her possession during the term of the lease and knew what it contained, as shown by her having the provision about the hen-house stricken out. The appellant, of course, supposed he was getting something by the option, and a court would be slow to believe that the appellant, desiring to secure an option for the purchase of the premises, would agree to take one which was no option at all. An option to purchase premises confers a privilege and gives to the party a right, privilege or choice to make the purchase. An agreement that the appellant could take the premises for $3000 if the appellee wanted to sell them to him would be no option and would confer no right or privilege, either as to purchase price or anything else. Appellee could refuse to sell at all or refuse to sell at the stipulated price. The conclusion of the chancellor who heard the evidence will be accorded much weight so far as the credibility of witnesses is concerned, but there was a complete failure to prove any mutual mistake. The finding was not only unsupported by any legitimate evidence, but was contrary to every natural inference to be drawn from the transaction. The chancellor erred in decreeing an alteration of the instrument from its terms.

The decree also found that the appellant had assigned the lease contrary to its terms and the appellee had availed herself of her option to declare it null and void. John F. Hahn was in the real estate business and was interested in buying lots of land for his clients and applied to the appellee for an option on these premises. He testified that

she said she did not know whether she could talk to him until she got through with appellant; that she did not think that she wanted to sign any more than she had and that she had signed too much already, and that appellee afterward called at his office and wanted to know why he did not wait until the lease with appellant expired. The appellee denied that she made these statements, and her daughter confirmed the denial. After calling on the appellee Hahn applied to the appellant to secure an option on the premises, and an instrument was executed as follows:

"In consideration of the sum of $50 and other good and valuable considerations, the receipt whereof is hereby acknowledged, I hereby give to John F. Hahn for the period of time from date to March 15, 1917, the option to purchase at the price of $6000 the following described real estate, situated in the town of Niles, Cook county, Illinois, to-wit, [describing premises,] hereby assigning, transferring and selling to said John F. Hahn all my right, title and interest in and to the certain lease to said premises recorded in the recorder's office of Cook county as document No. 5,528,847, reserving, however, the use of said premises until November 1, 1917, without the payment of rent therefor. A merchantable abstract of title showing good title in the undersigned to be furnished within thirty days from this date, and upon payment of the purchase price herein named, a good title is to be conveyed by warranty deed to the purchaser. Said abstract to be continued to the date of delivery of deed. The seller of the property herein described agrees to pay a commission to John F. Hahn of two and one-half per cent on the amount of the sale. It is further agreed that said John F. Hahn will within three months from this date give notice of his intentions to take advantage of this option on March 15, 1917.

"Dated Nov. 11, 1916.　　　HERMAN CHRIST. (Seal)"

The landlord has a right to stipulate against the assignment of a lease, but covenants of that kind are not favored by the courts and are not extended beyond the express stipulation. (*Postal Telegraph-Cable Co.* v. *Western Union Telegraph Co.* 155 Ill. 335; *Springer* v. *Chicago Real Estate Loan and Trust Co.* 202 id. 17; Talyor on Landlord and Tenant, sec. 402.) It is apparent that the instru-

287 — 40

ment was executed, not to give Hahn any right as lessee but to give him a right to have the premises under the option of the lease. The rent had been paid to the expiration of the lease, and the appellant reserved the use of the premises until November 1, 1917, without payment of rent, which extended about eight months beyond the expiration of the lease. He was to furnish a merchantable abstract of title showing good title in himself, procure a good title to be conveyed by warranty deed to the purchaser, and to pay a commission to Hahn of two and one-half per cent on the amount of the sale. Appellant was regarded as the seller of the premises at an advanced price and was to pay a commission to the real estate agent. The instrument did not amount to an assignment of the lease or underletting the premises. On the hearing it was stipulated that the appellee had entered into a contract with Hahn dated October 16, 1918, obligating herself, in case she prevailed in this suit, to sell and convey the land in question to Hahn upon the same terms and for the same price stipulated in her contract with the appellant, and that therefore Hahn was neutral in the controversy between the appellant and appellee. Hahn relinquished his right to avail himself of the option and entered into an agreement with appellee to buy the premises for $3000 on the same terms and conditions as the option to appellant. He claimed nothing under the instrument signed by the appellant, who had a right to enforce his agreement with the appellee. ·

The decree is reversed and the cause remanded, with directions to dismiss the cross-bill and grant the relief prayed in the original bill.

*Reversed and remanded, with directions.*