**SETZER'S STEEL SYSTEMS, INC., Appellant,**

v.

**CHENAULT DEVELOPMENT CORPORATION, Racquet Times, Inc.; and U.S. Racquetball Courts, Inc., Appellees.**

Court of Appeals of Kentucky.

Jan. 23, 1987.

Discretionary Review Denied by Supreme Court March 24, 1987.

Joseph B. Murphy, Lexington, for appellant.

C. Richard Doyle, Rebecca Kathryn Jude, Lexington, for appellee, Chenault Development Corp.

Before COMBS, LESTER and McDONALD, JJ.

COMBS, Judge.

This appeal is from a partial summary judgment of the Fayette Circuit Court holding appellant, Setzer's Steel Systems, Inc., [Setzer] liable to appellee, Chenault Development Corporation, [Chenault] for rents and taxes arising out of a lease agreement.

On August 15, 1975, Chenault entered into a lease and construction agreement with Racquet Times, Inc., for the construction of a racquetball facility on property

owned by Chenault. Chenault was to be the landlord and Racquet Times the tenant of the facility for a term of twelve years, commencing upon completion of the facility in early 1976. Paragraph 13 of the lease provided that no assignment or sublease, without the landlord's written and signed consent, would relieve the tenant from liability for failure to perform under the lease.

On October 8, 1975, Racquet Times assigned its leasehold to a joint venture comprised equally of itself and U.S. Racquetball Courts, Inc., to do business as Racquet Times (Lexington). Chenault gave its written and signed consent to this assignment. Simultaneously with this transaction, Setzer subcontracted with the joint venture to construct part of the building. Setzer also became a partner in the joint venture by purchasing a ten percent undivided interest.

In April, 1976, the joint venture assigned its leasehold to a new joint venture comprised of Racquet Times, Inc., U.S. Racquetball Courts, Inc., and Setzer, to be known as Racquet Time of Lexington. The new joint venture assumed all the obligations of the original lease, and agreed to pay all rents from and after April, 1976. This assignment was made without Chenault's written and signed consent. The building was completed and the term of the lease began at this time.

In March, 1977, a settlement agreement was reached in the Fayette Circuit Court in a separate lawsuit brought by Setzer against Racquet Times. Setzer acknowledged its partnership and tenant status in the joint venture. The settlement, among other things, gave Setzer an additional five percent undivided interest in the joint venture.

As of July, 1984, the joint venture quit paying rent. Chenault filed an action in the Fayette Circuit Court in August of that year, and was granted partial summary judgments in December, 1984, February, 1985, and December, 1985. This appeal was taken from the last judgment.

Setzer first argues that KRS 362.230 absolves it from any *personal* liability, and that it is only liable, if at all, out of the partnership property. KRS 362.230 states:

A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that the liability shall be satisfied only out of partnership property.

■ Setzer takes the position that since the lease was originally signed in August, 1975, and it did not become a partner in the joint venture until October, 1975, this statute relieves it from personal liability for the rents and taxes. This argument ignores the difference between when a debt is incurred and when a debt arises. In this case, although the obligation to pay rent and taxes was *incurred* in August, 1975, when the lease was originally signed, and before Setzer's involvement in the venture, the obligation *arose* in April, 1976, after Setzer became a partner. Therefore, KRS 362.230 does not provide Setzer with any relief.

Setzer also argues that the assignment from Racquet Time (Lexington) to the second joint venture was ineffective because it lacked Chenault's written and signed consent. Therefore, Setzer argues, there was no mutuality of obligation between it and Chenault. In support thereof, Setzer cites *Green River Steel Corp. v. Globe Erection Co.*, Ky., 294 S.W.2d 507 (1956), specifically the language stating the general rule that:

[W]here an agreement is made, subject to the consent or approval of a third person, it must be looked on as a conditional agreement, dependent on such consent being given within a reasonable time, in default of which the agreement must be taken not to have been effective. *Id.* at 509.

This states the broad, general rule. However, *Green River* involved an original construction contract between two parties, conditioned upon approval by a federal

agency. Approval by the federal agency was necessary for the fulfillment of the contract because without it the agency would not loan Green River Steel Corporation the funds necessary for construction.

■ Facts in the present case are entirely different, and call for a rule more focused upon landlord-tenant law. That rule is found in *Cities Service Oil Co. v. Taylor*, 242 Ky. 157, 45 S.W.2d 1039 (1932), wherein the court held that an assignment of a lease which violates a covenant does not automatically terminate the lease, but merely gives the lessor the option to terminate, or waive such option and continue the leasehold. One obvious way for the lessor to waive the option is to accept rent money from the assignee after the assignment in violation of the covenant occurred, with knowledge that it had occurred. This is precisely what took place in this case for a period of some seven years following the renegade assignment. Therefore, we find the assignment whereby Setzer assumed the obligations of a tenant under the lease was effective.

Finally, Setzer claims the conveyance of its fifteen percent interest in the joint venture on December 31, 1984, ended its obligation under the lease, and because of this avoidance defense the subsequent partial summary judgment was erroneous.

■ The record shows that Setzer transferred for a consideration of five hundred dollars its fifteen percent interest in the joint venture, along with its obligations for rent and taxes, to a corporation we think not coincidentally named "Setzer's Investments Corporation." Remarkably, this transaction took place between Chenault's obtention of its first and second partial summary judgment awards against Setzer. We are convinced that the transfer to "Setzer's Investments Corporation" was void as violative of Kentucky's fraudulent transfer statute, KRS 378.010, and produced no issue of fact or law that would make the trial court's granting of the partial summary judgment motion erroneous.

The judgment of the Fayette Circuit Court is affirmed.

All concur.